UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 17, 2018

JEFFERSON RANDOLFO FLORES ZABALETA,

                Petitioner,

     - against -

THOMAS DECKER, ET AL.,

              Respondents.

18-cv-1802 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

    This case concerns certain alleged legal and constitutional errors that the petitioner, Jefferson Randolfo Flores Zabaleta, claims occurred during the hearings to determine whether he should be released on bond during his immigration removal proceedings. The petitioner moves for a writ of habeas corpus under 28 U.S.C. § 2241. Specifically, he claims that, having been released on bond by an immigration judge ("IJ"), the respondents violated the Fifth Amendment's Due Process Clause, the Fourth Amendment's proscription against unreasonable seizures, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA") by revoking his bond and conducting subsequent custody proceedings on the grounds that he was driving without a license. Am. Pet. ¶¶ 29, 51, 56-59, 61-62, 78. Further, the petitioner claims that in the process of determining whether he should be released on bond and his subsequent appeal, the IJ and Board of Immigration Appeals

("BIA") committed legal error by relying on erroneous interpretations of the INA and unambiguous mischaracterizations of fact.

For the reasons set forth below, the petition is **granted.** The respondents are ordered to provide the petitioner with a new hearing before the BIA within thirty (30) days of this Opinion or release the petitioner from custody on his original bond, which had already been set by the first IJ to consider his release.

I.

The petitioner is a Guatemalan asylum applicant who entered the United States in September 2007, when he was ten years old. Am. Pet. ¶ 1. Two years later, an IJ ordered that the petitioner be removed from the United States to Guatemala pursuant to INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). Id. ¶ 2; O'Reilly Decl. ¶ 11; Opp'n at 3.

In 2016, the petitioner retained new counsel and moved to reopen his removal proceedings. Am. Pet. ¶ 19. The BIA granted the motion, and the petitioner's removal proceedings were remanded to the immigration court in September 2017. Id. ¶ 21. Immigration and Customs Enforcement ("ICE") served the petitioner with a notice of custody determination, which stated that ICE would keep the petitioner in custody under

8 U.S.C. § 1226(a) pending the outcome of his removal proceedings. O'Reilly Decl. ¶ 15; Opp'n at 5.

The petitioner received a bond hearing on November 24, 2017, before IJ Thompson. Am. Pet. ¶ 23. Finding that the petitioner did not pose a danger to the community and was not a flight risk, IJ Thompson released the petitioner on a $5,000 bond under § 1226(a)(2) and 8 C.F.R. § 236.1(c). Id. ¶ 23; Reply Ex. B. The immigration authorities did not appeal that bond determination.

On February 13, 2018, the petitioner was arrested by the Suffolk County Police and pleaded guilty to driving without a license -- a misdemeanor violation of New York Vehicle and Traffic Law § 511.1. Am. Pet. ¶ 24. ICE then placed an immigration detainer on the petitioner. Id. The petitioner was transferred to ICE's custody under 8 U.S.C. § 1226(a) on February 27. Id. On February 28, ICE served the petitioner with a notice of custody determination, stating that the petitioner was still subject to custody under § 1226(a), and that ICE would keep the petitioner in custody pending his removal proceedings. O'Reilly Decl. ¶ 29; Return Ex. B.

On April 3, 2018, the petitioner was granted a custody hearing in front of IJ Hom. Am. Pet. ¶ 26. At that hearing, the petitioner argued that because he had been released previously, a prior BIA decision, Matter of Sugay, 17 I&N Dec. 637 (BIA

1981), required that the Department of Homeland Security ("DHS") prove that there were materially changed circumstances requiring his re-detention. Id. ¶ 27; Opp'n Ex. C, at 4, 6. IJ Hom appeared to place that burden on the petitioner, stating that "[a] respondent may make a subsequent application for bond redetermination" and that "such a request must be in writing and must demonstrate materially changed circumstances." Am. Pet. Ex. 1. The immigration court found that there were materially changed circumstances because the petitioner allegedly violated the conditions of his bond by driving without a license.[1] The immigration court then placed the burden on the petitioner to show that he is not a danger to the community or a flight risk. Id. (stating that in a custody hearing, the "alien must establish . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight").

---

[1] The IJ referred to 8 C.F.R. § 1003.19(e), which is the regulation affording a detainee in removal proceedings the right to seek redetermination of a bond determination if the detainee shows "materially changed circumstances." The parties agree that the bond proceedings in this case are governed not by § 1003.19(e), but rather by 8 C.F.R. § 236.1(c)(9), because the immigration authorities, rather than the petitioner, initiated the proceedings by revoking the petitioner's bond and redetaining him. In any event, IJ Hom found that there were materially changed circumstances because the petitioner violated a condition of his release on bond by driving without a valid driver's license. As explained below, there was no support in the record for a finding that the petitioner violated a condition of his release, as found by IJ Hom.

IJ Hom declined to reinstate the petitioner's original
$5,000 bond. Am. Pet. ¶ 35. IJ Hom found that the petitioner
poses a danger to the community because the petitioner violated
a condition of his bond by driving without a license and
demonstrated a disregard for the law. Am. Pet., Ex. 1, at 2-3.
Further, although the flight risk issue had already been
litigated before IJ Thompson, because the petitioner's recent
claims to avoid removal had been rejected, the immigration court
found that the petitioner had "failed [to] present sufficient
evidence to show that he would not be a flight risk." Id. at 3.

The petitioner appealed the immigration court's decision to
the BIA. Am. Pet. ¶ 14. The BIA dismissed the petitioner's
appeal on September 7, 2018. See Yeferson Randolfo-Zapaleta,
A088 663 984 (BIA Sept. 7, 2018). The BIA agreed with the
petitioner that Matter of Sugay applies to his bond proceedings,
but disagreed with the petitioner over what Matter of Sugay
requires. Id. at 2. While the petitioner argued that Matter of
Sugay requires the government to show "a material change in
circumstances" before bond can be revoked, the BIA held that
Matter of Sugay requires a change in circumstances, but has no
materiality requirement. Id. Further, the BIA held that the
burden is on the alien to "establish that he does not present a
danger to the community or a flight risk." Id. at 3.

The BIA found that the petitioner's arrest for driving without a license was a sufficient change in circumstance to justify revoking his original $5,000 bond. Id. at 2. Unlike IJ Hom, the BIA expressed no opinion as to whether driving without a license was a violation of the petitioner's bond. The BIA agreed with IJ Hom that driving without a license demonstrated a "disregard for the laws of this country." Id. at 3. Considering the Vehicle and Traffic violation together with other prior offenses, the BIA found that the petitioner "represents a danger to the community." Id.

Like IJ Hom, rather than defer to IJ Thompson's determination that the petitioner is not a flight risk, the BIA adjudicated this question. Finding that the petitioner's prospects for relief against removal have diminished because of adverse developments in his removal proceedings, the BIA held that he is a risk of flight. Id. The BIA based this decision, at least in part, on its conclusion that the petitioner is no longer eligible for Special Immigrant Juvenile ("SIJ") status -- a form of immigration relief that provides a path to lawful permanent residence in the United States[2] -- because he is now "over the age of 21." Id. at 3 n.5.

---

[2] See 8 U.S.C. §§ 1101(a)(27)(J); 1255(a), (h).

II.

Congress has granted the Attorney General authority to detain aliens during their removal proceedings. 8 U.S.C. § 1226(a); Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . aliens pending their removal."). Under § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Except as provided in subsection (c)" -- a provision not at issue in this case -- "the Attorney General may release" aliens detained under § 1226(a) "on bond . . . or conditional parole." Id.; Jennings, 138 S. Ct. at 837.

28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." See Hernandez v. Decker, No. 18cv5026, 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018). The petitioner in this case has been detained for twelve of the last fifteen months under § 1226(a). He claims that he is entitled to the writ of habeas corpus because of certain legal and constitutional errors that occurred when his bond was revoked and during his subsequent custody proceedings.

III.

The government argues that this Court lacks jurisdiction to review the petitioner's custody challenge because federal court review of bond determinations is explicitly barred by 8 U.S.C. § 1226(e).[3] That provision strips federal courts of jurisdiction to review the discretionary decisions of IJs and the BIA in their application of 8 U.S.C. § 1226 -- the provision under which the petitioner is being held in custody. Lantigua v. Decker, No. 17cv4880, 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017). However, as the government concedes,[4] § 1226(e) does not bar the Court from reviewing constitutional claims and legal errors. Id.

"A decision is discretionary" and therefore beyond this Court's jurisdiction to review, "when it pertains to 'the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion.'" Id. (citation omitted). Despite this jurisdictional bar, "[c]ourts may nonetheless exercise jurisdiction over questions of law or constitutional challenges to the application of § 1226." Id. This is because "Section 1226(e) contains no explicit provision barring habeas review,"

---

[3] Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

[4] See Opp'n at 17; Letter from the Government to the Court (Sept. 15, 2018), ECF No. 31.

nor does "its clear text . . . bar . . . constitutional challenge[s]." Demore v. Kim, 538 U.S. 510, 517 (2003).

In differentiating between discretionary determinations and questions of law, the Second Circuit Court of Appeals has held that, among other defects, an "unambiguous mischaracterization of the record raises a question of law." Liu v. INS, 508 F.3d 716, 722 (2d Cir. 2007) (internal quotation marks and citation omitted).

In determining whether there was an error of law or a constitutional violation, the Court should consider the IJ decision to the extent that the BIA closely tracked that decision.

> When the BIA briefly affirms the decision of an IJ and adopts the IJ's reasoning in doing so, we review the IJ's and the BIA's decisions together. When the BIA does not expressly adopt the IJ's decision, but closely tracks the IJ's reasoning, we also may review both decisions.

Y.C. v. Holder, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation marks and citations omitted).

The petitioner alleges both constitutional and legal errors. The Court has jurisdiction to review those claims.

IV.

The petitioner alleges that, during the pendency of his bond proceedings, the immigration authorities committed two legal errors, both of which prejudiced the petitioner because

they were relied upon by the IJ and the BIA in denying his
request to reinstate his original bond. The Court agrees.

In determining that the petitioner poses a danger to a
community, IJ Hom relied on the conclusion that by driving
without a license, the petitioner violated a condition of his
bond. However, the petitioner has shown that no such bond
condition existed and the government has not even responded to
that showing in this proceeding. Am. Pet. ¶ 35; Reply Ex. E. By
stating that the petitioner violated a condition of his bond, IJ
Hom "unambiguously mischaracterized a central element of the
record" and, therefore, committed reviewable legal error. Liu,
508 F.3d at 722 (internal quotation marks and citation omitted).
The IJ relied on that determination to find both changed
circumstances and that the petitioner poses a danger to the
community. Am. Pet. Ex. 1, at 2. The BIA's decision does not
address the issue and it is therefore unclear whether the Board
relied on the IJ's misstatement of fact in adjudicating whether
the petitioner poses a danger to the community. It is clear that
the BIA did not correct the error and indeed appeared to follow
it. See Yeferson Randolfo-Zapaleta, A088 663 984, at 3 (BIA
Sept. 7, 2018) (noting that the petitioner's arrest for driving
without a license "occurred only 11 weeks after being granted
bond by the Immigration Judge").

The BIA also committed a legal error in describing the legal support for the determination that the petitioner is a flight risk. As described above, the BIA found that the petitioner's prospects of succeeding in his claims against removal have diminished. The petitioner has an ongoing appeal before this Court regarding a previous denial of SIJ status. The BIA found that the petitioner's SIJ status appeal is futile because he "has now aged out of SIJ status, as he is over the age of 21." See Yeferson Randolfo-Zapaleta, A088 663 984, at 3 n.5 (BIA Sept. 7, 2018). As the government concedes,[5] the BIA's conclusion with respect to SIJ status is an unambiguous misstatement of the law. The Trafficking Victims Protection Reauthorization Act ("TVPRA") § 235(d)(6) explicitly freezes the age of an SIJ status applicant as of the date of the applicant's filing of an SIJ status petition. 8 U.S.C. § 1232(d)(6). Under the TVPRA, as a matter of law, the petitioner cannot "age out" of SIJ status eligibility, because he had filed his application at a time when he was eligible for SIJ status. Therefore, a component of the BIA's determination of flight risk was plain error.

V.

There was legal error in the components of the BIA's determination that the petitioner was a danger to the community

---

[5] Letter from the Government to the Court (Sept. 15, 2018), ECF No. 31.

and a risk of flight. The Court cannot determine whether, absent

those errors, the BIA would have reached the same conclusion.

Therefore, the appropriate remedy is to vacate the decision of

the BIA and to remand the petitioner's bond revocation

proceeding to the BIA for a determination of the petitioner's

bond revocation appeal and any other relief the BIA finds

appropriate. If the petitioner is not afforded a new appeal

before the BIA within thirty (30) days, then the petitioner

should be released on his original bond.[6]

                              CONCLUSION

For the foregoing reasons, the petition is **granted**. The

petitioner is entitled to a new appeal before the BIA. The

respondents shall afford the petitioner a new appeal before the

---

[6] It is unnecessary to reach the petitioner's remaining arguments. In particular, while the petitioner argues that the government had the burden of proving a material change in circumstances, danger to the community, and risk of flight by clear and convincing evidence, it is unclear that such a standard would make any difference in this case. The Supreme Court recently held that the statute itself does not require the government to carry the burden of showing danger to the community and risk of flight by clear and convincing evidence. See Jennings, 138 S. Ct. at 847 (holding that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" the clear and convincing evidence standard). However, the Supreme Court left open the question of whether the Constitution requires the imposition of such a standard. Id. at 851. In the wake of Jennings, a number of courts in this District have considered the issue and held that due process requires the government to carry the burden by clear and convincing evidence, although, in each of those cases, no bond hearing had yet been held and the courts were setting standards for the prospective hearings. See Perez v. Decker, No. 18cv5279, 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018) (alien being held in custody under § 1225(b)); Brissett v. Decker, No. 18cv2831, 2018 WL 3918186, at *6 (S.D.N.Y. Aug. 16, 2018) (same); Hernandez, 2018 WL 3579108, at *11 (alien being held in custody under § 1226(c)); Sajous v. Decker, No. 18cv2447, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) (same).

BIA within **thirty (30) days** or release the petitioner on his original $5,000 bond.

The Court has considered all of the arguments raised by the parties. To the extent they are not specifically addressed, they are either moot or without merit. The Clerk is directed to close Docket No. 10. The Court will retain jurisdiction over this case to resolve any issues with respect to the scheduling of the new appeal before the BIA.

**SO ORDERED.**

Dated:      New York, New York
            September 17, 2018

                                        John G. Koeltl
                                United States District Judge